**HYDE & SWIGART, APC**
Joshua B. Swigart, Esq. (CA SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone:   (619) 233-7770
Facsimile:   (619) 297-1022

**KAZEROUNI LAW GROUP**, APC
Abbas Kazerounian, Esq. (CA SBN: 249203)
ak@kazlg.com
Clark Conforti, Esq. (CA SBN: 317698)
clark@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone:   (800) 400-6808
Facsimile:   (800) 520-5523

*Attorneys for Plaintiff*,
Andrew Laich

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LAICH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITAINMENT INC., a Virginia corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof.  Code § 17529.5)**<br><br>**JURY TRIAL DEMANDED** |

# I. INTRODUCTION

1. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." *See* California Business & Professions ("Bus. & Prof.") Code § 17529(a).

2. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000), including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." Bus. & Prof. Code § 17529(d).

3. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *Rao, Justin M., and David H. Reiley*. 2012. "The Economics of Spam." *Journal of Economic Perspectives*, 26 (3): 87-110.[1]

4. As of November of 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide. *Symantec Corporation,* Monthly Threat Report (December 2018).[2]

//

//

---

[1] htttps://www.aeaweb.org/articles?id=10.1257/jep.26.3.87 (last visited Dec. 19, 2018)

[2] https://www.symantec.com/security-center/publications/monthlythreatreport (last visited Dec. 19, 2018)

## II. SUMMARY OF THE COMPLAINT

5. Plaintiff ANDREW LAICH ("Plaintiff") brings this Action against Defendant COMMUNITAINMENT INC. ("Defendant"), a Virginia corporation for advertising in at least ninety-six (96) unlawful spams sent to Plaintiff.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

6. Plaintiff never gave "direct consent"[3] (as required by law) to receive commercial e-mail advertisements from, or had a preexisting or current business relationship with, Defendant.

7. The spam e-mails sent by Defendant materially violated Bus. & Prof. Code § 17529.5 ("Section 17529.5") because there was materially false and deceptive information: (1) contained in or accompanying the e-mail headers, specifically the From Name and/or Sender E-mail Address, and/or (2) used in Subject Lines which are misleading to a reasonable person relative to the contents of the e-mails' body and/or subject matter of the advertisement.

8. Defendant is strictly liable for advertising in spams sent by its third-party marketing agents, as are the marketing agents themselves.

9. All of the offending spam e-mails were sent to a California e-mail address.[4]

10. Spam recipients are not required to allege or prove reliance or actual damages to have standing. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiff did suffer damages by receiving the spam e-mails. *See, e.g.,* Bus. & Prof. Code §§ 17529(d), (e),

---

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1(b).

(g), (h). However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

11. This Court should award liquidated damages of $1,000 per unlawful e-mail as provided by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii) because Defendant failed to implement reasonably effective systems designed to prevent the advertising in unlawful spams in violation of the statute.

12. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

13. Plaintiff is entitled to attorneys' fees pursuant to Bus. & Prof. Code § 17529.5(b)(1)(C).[5]

## II. PARTIES

### A. Plaintiff Andrew Laich

14. Plaintiff is now, and at all times relevant has been, an individual domiciled in the State of California, County of San Bernardino.

15. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California. Plaintiff ordinarily uses this computer to access his e-mail address.

16. The spams at issue were sent to Plaintiff's e-mail address *Andrew_Laich@yahoo.com*. Plaintiff ordinarily accesses this e-mail account from California.

### B. Defendant COMMUNITAINMENT INC

17. Defendant COMMUNITAINMENT INC is currently, and was at all relevant times, a Virginia corporation, headquartered in Alexandria, Virginia.

18. Defendant is currently, and was at all relevant times, the owner and operator of the websites at issue, *VictoriaDates.com, LoveSwans.com, AsiaCharm.com,* and *VictoriaHearts.com.*

---

[5] *See also* Cal. Code Civ. Proc. § 1021.5, providing for attorneys fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here by reducing the amount of false and deceptive spam received by California residents.

## III. JURISDICTION AND VENUE

### A. The District Court has Diversity Jurisdiction

19. Plaintiff brings this Complaint based on federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

20. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with this state, and purposely avails itself of the markets in this state through the promotion, sale, and marketing of its products and services provided on Defendant's websites that are targeted to California consumers. Defendant's contacts with the state of California render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

### B. Venue is Proper in the Central District's Eastern Division

21. Venue in the United States District Court, Central District of California, Eastern Division, is proper pursuant to 18 U.S.C. § 1391(b) because the injury to Plaintiff occurred in the County of Riverside and Defendant does business within the State of California and the County of Riverside.

## IV. THE 96 UNLAWFUL SPAMS

### A. The E-mails at Issue are "Spams"

22. Plaintiff received at least ninety-six (96) spams advertising Defendant's websites at his "California e-mail address."

23. The e-mails at issue are "commercial e-mail advertisements"[6] because they advertise products and services for their "dating" websites.

---

[6] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

24. The e-mails are "unsolicited commercial e-mail advertisements"[7] because Plaintiff never gave "direct consent" to Defendant or its affiliates to send commercial e-mails.

25. Plaintiff has never had a "preexisting or current business relationship"[8] with Defendant or its affiliates.

26. Even *if* Plaintiff had opted in to receive e-mails from Defendant's marketing agents—which Plaintiff denies—that would not constitute *direct* consent to Defendant or the advertisers in the spams. *See Balsam v. Trancos Inc.,* 203 Cal. App. 4th 1083, 1099-1100 (1st Dist. 2012), *petition for review denied,* 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied,* 2012 U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied,* 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013).

27. Plaintiff did not consent or acquiesce to receive the spams at issue. Plaintiff did not waive any claims related to the spams at issue.

28. Defendant advertised in, sent, and/or conspired to send at least ninety-six (96) unlawful spams that Plaintiff received at his "California e-mail address."

29. The spams are all unlawful because there is materially false and deceptive information contained in or accompanying the e-mail headers, and/or misleading Subject Lines, as described in more detail below.

///

///

---

[7] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[8] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []." Bus. & Prof. Code § 17529.1(*l*).

B. **Spams Containing Third-Parties' Domain Names Without Their Permission Violate Business & Professions Code § 17529.5(a)(1)**

30. Section 17529.5(a)(1) prohibits spams containing or accompanied by a third-party's domain name without the permission of the third-party.

31. Almost all of the spams that Plaintiff received advertising Defendant's websites contained third-parties' domain names without the the third-party's permission, and therefore violated Section 17529.5(a)(1). The domain names were used in forged e-mail addresses located in the sending e-mail field in each of the spam's e-mail headers. The purported sending e-mail addresses were: *customerservice@walmart.com, webservice@contactcostco.com, info@genealogydresses.com, ebay@ebay.com, primary@amazon.com, kapaza@kapaza.be,* and *customerservice@emea.salesforce.com.*

32. Plaintiff is informed, believes, and thereon alleges that the owners of each of these domain names did not permit their use.

33. Furthermore, the spams Plaintiff received, which showed *customerservice@walmart.com, webservice@contactcostco.com, info@genealogydresses.com, ebay@ebay.com, primary@amazon.com, kapaza@kapaza.be,* and *customerservice@emea.salesforce.com*, respectively, in the sending e-mail address fields, were not actually sent from those respective e-mail addresses. Thus, the spams contained falsified and forged information, which also violates Section 17529.5(a)(2).

C. **Spams With Generic or False From Names Misrepresent *Who* is Advertising in the Spams and Violate Business & Professions Code § 17529.5(a)(2)**

34. Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying e-mail headers.

35. The From Name field is part of e-mail headers. The From Name does not include the Sender E-mail Address. So, for example, if an e-mail's From Line says: "John Doe <johndoe@yahoo.com>", the From Name is just "John Doe."

36. The From Name in an e-mail's headers is designed to identify *who* the e-mail is from; not an advertising message. Because computers must use standard protocols in order to

7
COMPLAINT

communicate, the Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules that enable e-mail to work. According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

37. Plaintiff does not insist on any particular label (e.g., "Communitainment," etc.) in the From Name field. Rather, Plaintiff contends that the text, whatever it is, cannot misrepresent *who* the e-mails are from.

38. The From Name is important to an e-mail user, because in almost all e-mail programs, the inbox view only displays a list of e-mails, showing the From Name, Subject Line, and Send Date. Therefore, even if the body of the e-mail identifies the advertiser, the recipient will not know that until he has already clicked to open the e-mail.

39. Empirical evidence demonstrates that the From Name is the most important factor e-mail recipients use to determine whether or not an e-mail is spam. *See* eMarketer, E-Mail Open Rates Hinge on 'Subject' Line, available at http://www.emarketer.com/ Article/E-Mail-Open-Rates-Hinge-on-Subject-Line/1005550 (Oct. 31, 2007). Thus, a From Name that misrepresents *who* a spam is from is not a mere technical error; rather, it is a material misrepresentation of the most important part of the e-mail header. 

40. The only content of a "From" line visible before an e-mail is opened is the "From Name." Therefore, a From Name that misrepresents *who* a spam is from is a material misrepresentation of the most important part of the e-mail header—not merely a clerical error.

41. Although Plaintiff does not bring any claims under the federal CAN-SPAM Act, the Federal Trade Commission ("FTC") identified the From Name as the first item in

misleading header information in its guide to CAN-SPAM compliance when it stated: "Don't use false or misleading header information. Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and e-mail address – *must be accurate and identify the person or business who initiated the message*." Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business, available at http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business (emphasis added).

42. In *Balsam v. Trancos, Inc.* (2012) 203 Cal. App. 4th 1083 (*Balsam*), the court of appeal upheld the trial court's ruling that seven unlawful spam e-mails that included generic From Names ("Paid Survey," "Your Business," "Christian Dating," 'Your Promotion," "Bank Wire Transfer Available," "Dating Generic," and "Join Elite") violate the statute because they misrepresent *who* the e-mails are from.

43. More specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise misrepresented when they do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute, even if the spam e-mails identified the advertiser in the body of the e-mails. *Id*. at 1091, 1093. Therefore, truthful information in the body of a spam does not cure misrepresented information contained in or accompanying the headers.

44. Most of the spams that Plaintiffs received advertising Defendant's websites had From Names that misrepresented who the spams were from, and therefore violated Section 17529.5(a)(2). The From Names used in the spams at issue include "Match Truly," "Jennifer33," "Kim," "Russian Beauties," "Evaneca," "Mary," "Sara 27," "Amanda 26," "Lauren," "F*ckbuddy Request," "Sexy-girl," "SecretAffair," "Amanda," "LocalS*xAlert," "Kim-K," "Sarah," "F#ckBuddy HOOkup," "Single Team," "Anna," "Karol-Mc," and "Lani."

45. The From Names which include women's first names are all generic From Names. Plaintiffs are informed and believe and thereon allege no such women sent the spams at all, and therefore these From Names misrepresent who the spams are actually from.

46. The From Names "Match Truly," "Russian Beauties," "F*ckbuddy Request," "Sexy-girl," "SecretAffair," "LocalS*xAlert," "F#ckBuddy HOOkup," and "Single Team" are utterly ambiguous as to *who* the spam is from, and contain misrepresented information because the spams are not from any of these purported senders. These terms could just as easily refer to numerous dating websites such as CharmDate.com, HotRussianSingles.com, or Dream-Singles.com – some of Defendant's competitors.

47. Plaintiff is informed and believes and thereon alleges that Defendant's and their agents knowingly choose to advertise using generic From Names precisely so the recipients will *not* know who the e-mails were really from when viewing the spams in the inbox view. This forces recipients to open the e-mails to see if the e-mails might actually be from someone with whom the recipient has had dealings, or if the e-mails are in fact, as is the case here, nothing but spams.

48. In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the sender's official corporate name as long as the identity of the sender was readily ascertainable in the body. 230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014). However, the From Names in that case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known brands with their own websites. But here, unlike the spams in *Rosolowski*, the From Names used are generic; not well-known trademarks and/or brands readily associated with Defendant. There is no way an ordinary consumer, looking at the same or similar e-mail From Name in his/her inbox, could readily associate them with Defendant.

49. In most of the spams at issue, the sender is falsely identified in the body, or not identified in the body of the spams at all, thus *Balsam* would control, not *Rosolowski*.

C. **Spams Sent From Domain Names Registered So As To Not Be Readily Traceable to the Sender Violate Business & Professions Code § 17529.5(a)(2)**

50. Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained in or accompanying in e-mail headers.

51. Registration information for the domain names used to send spams is information contained in or accompanying e-mail headers.

52. "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." *Balsam*, 203 Cal. App. 4th at 1101 (emphasis in original).

53. All of the spams that Plaintiff received advertising Defendant's websites were sent from domain names that were not registered so to not be readily traceable to the sender by querying the Whois database, in violation of Section 17529.5. *Balsam*, 203 Cal. App. 4th at 1097-1101.

54. Some of the spams at issue came from proxy registered domain names—*bfi0.com, driverspermissions.com, financialinformations.com, initiativestart.com, 1sportlife.com, liking24x7.com, nextarmin.com,* and *oursriveste.com.*

55. The *Balsam* court held that sending a spam from a domain name that is proxy-registered is a misrepresentation as to *who* the sender actually is, and thus violates Section 17529.5.

56. One spam was sent from an e-mail address with the domain name *e-ebuyer.com*. However, this domain name is not even registered on the WHOIS database and is currently up for sale. Thus, this e-mail address was forged, and is a misrepresentation as to *who* the sender is, so it violates Section 17529.5(a)(2).

57. Almost all of the spams purported to be sent from *customerservice@walmart.com, webservice@contactcostco.com, info@genealogydresses.com, ebay@ebay.com, primary@amazon.com, kapaza@kapaza.be,* and *customerservice@emea.salesforce.com*, in the sending e-mail address field in the e-mail headers were not actually sent from those respective e-mail addresses, thus the spams contained falsified and forged information, which violates Section 17529.5(a)(2).

58. Plaintiff could not identify Plaintiff or its spamming affiliates that sent the spams at issue by querying the Whois database for the domain names used to send all of the spams at issue.

**D. Spams With Subject Lines Misleading Relative to the Contents of the Spams Violate Business & Professions Code § 17529.5(a)(3)**

59. Section 17529.5(a)(3) prohibits Subject Lines likely to mislead a reasonable recipient about the contents or subject matter or the e-mail.

60. Many of the spams that Plaintiffs received contain Subject Lines that are misleading, in violation of Section 17529.5(a)(3).

61. All of the spams that Plaintiff received contain misleading Subject Lines. These Subject Lines were misleading relative to the subject matter of the e-mails, which violate Section 17529.5(a)(3). A few examples of these Subject Lines are as follows:

- Andrew Laich See my nude pics & let's meet ❣
- 1 Missed F*ckbuddy Message
- Andrew Laich, i Sent You My Last Naked Video25+
- Andrew Laich, Just to Say Hello ..See my nude pics
- Andrew Laich, View My (8) Private Photos "**SEXY**"
- Andrew Laich, I sent You What you asked me for .... let's meet ?
- A little bigger than most girls, and Very Horny - You Curious?
- She's Waiting to F*ck…
- You have 4 new e-mails & messages _ Only for 35+
- Andrew Laich,  **i Sent You My** (**8**) **Private Photos** "**SEXY**"
- Andrew Laich,  Find Sex Partners in Your AREA!
- Waiting for a F*ckbuddy
- 1 Missed F*ckbuddy Message
- Andrew Laich, I Wanna Feel You All Over My Body ?

62. All of the Subject Lines in the spams received by Plaintiff are materially misleading because they each are likely to mislead a recipient into believing that: (1) a personal relationship exists between Plaintiff and the purported women—when no such relationship exists, (2) that these women actually sent the spams—which they have not, (3) that women on the Defendant's websites are interested in finding a relationship—

when the women on the websites at issue are actually paid to communicate, and/or (4) that the e-mails are of a personal nature as opposed to a commercial nature—when it is commercial.

### E. **Plaintiff is Strictly Liable for the Spams Sent By Its Marketing Agents**

63. Plaintiff is informed and believes and thereon alleges that Defendant contracted with third-party advertising networks and affiliates to advertise its website for the purpose of selling products and services for a profit.

64. Defendant voluntarily chose to outsource its advertising to third-party spam networks and spammers.

65. Advertisers are liable for advertising in spam e-mails, even if third-parties sent the e-mails: "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements." Bus. & Prof. Code § 17529(j)(k). "It is unlawful [ ] *to advertise* in a commercial e-mail advertisement [ ] under any of the following circumstances…" Bus. & Prof. Code § 17529.5 (emphasis added). Thus, Defendant's agents are also liable for sending the unlawful spams.

66. Section 17529.5(a) "makes an entity *strictly liable* for advertising in a commercial e-mail . . . *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient." *Hypertouch Inc. v. ValueClick Inc. et al.,* 192 Cal. App. 4th 805, 820-21 (2011) (emphasis added)).

### F. **Plaintiff Sues for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary**

67. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

68. Plaintiff is informed and believes and thereon alleges that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

69. Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

70. Section 17529.5 does not require Plaintiff to quantify his actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

71. However, Plaintiff did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California e-mail addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiff do not seek actual damages in this Action, only liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(B).

**G. Defendant's Actions Were Willful and Preclude any Reduction in Statutory Damages**

72. Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam. Bus. & Prof. Code § 17529.5(b)(2).

73. To secure the reduction, Defendant has the burden of proof to demonstrate that: (1) it has *established* practices and procedures to prevent unlawful spamming, (2) it has *implemented* those practices and procedures, and (3) that the practices and procedures are *effective*.

74. Plaintiff is informed and believes and thereon alleges that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

75. Even if Defendant had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

76. Even if Defendant reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

77. Moreover, Plaintiff is informed and believes and thereon alleges that Defendant intended to deceive recipients of their spam messages through the use of falsified, misrepresented, and/or misleading information in From Names, domain name registrations, and Subject Lines, as described herein.

78. Defendant's agent consciously wrote the Subject Lines and From Names.

79. Defendant's agent consciously registered proxy-registered domain names at issue.

80. Defendant's agent went to great lengths to create falsified and misrepresented information contained in and accompanying the e-mail headers in order to deceive recipients, Internet Service Providers, and spam filters.

81. Defendant intended to profit, actually profited, and continue to profit, and were unjustly enriched by the wrongful conduct as described herein.

### FIRST CAUSE OF ACTION
**[Violations of California Restrictions on Unsolicited Commercial E-mail, California Business & Professions Code § 17529.5]**

82. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

83. Plaintiff received the spams within one year prior to filing this Complaint.

84. Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent, at least ninety-six (96) unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail addresses that had materially falsified and/or misrepresented information contained in or accompanying the e-mail headers, and/or contained Subject Lines that were misleading in relation to the bodies of the e-mails, in violation of Section 17529.5. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

85. The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per e-mail.

86. Defendant has not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle it to a reduction in statutory damages.

87. Plaintiff seeks reimbursement of attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).

88. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

103. An Order from this Court declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spams.

104. Liquidated damages against Defendant in the amount of $1,000 per unlawful spam, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

105. Attorneys' fees as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).

106. Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

107. Costs of suit.

108. Such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

109. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

|    |                          |                                  |
|----|--------------------------|----------------------------------|
| 1  |                          | **HYDE & SWIGART, APC**          |
| 3  | Date:  December 27, 2018 | BY:s/ Joshua B. Swigart          |
| 4  |                          | Joshua B. Swigart, Esq.          |
| 5  |                          | *Attorneys for Plaintiff*        |